# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                    No. CR 15-3051 JB

RICHMOND SAM,

      Defendant.

## MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on Defendant Richmond Sam's Appeal from the Magistrate's Oral Detention Order, filed October 7, 2015 (Doc. 25)("Appeal"). The Court held a hearing on October 16, 2015. The primary issues are: (i) whether the Court should release Defendant Richmond Sam pretrial under conditions that mitigate his risk of flight; and (ii) whether the Court should release Sam under conditions that mitigate the risk of danger that he presents to the community. The Court concludes that, given Sam's history of violence, the Court cannot impose conditions sufficient to mitigate the risk of danger he poses to the community. The Court will therefore affirm the Honorable Steven Yarbrough, United States Magistrate Judge for the District of New Mexico's Detention Order Pending Trial, filed August 5, 2015 (Doc. 12), and order that Sam remain in custody pending trial.

---

[1]The Court entered an Order, filed October 29, 2015 (Doc. 30), denying Defendant Richmond Sam's Appeal from the Magistrate's Oral Detention Order, filed October 7, 2015 (Doc. 25). In the Order, the Court stated that it would "at a later date issue a memorandum opinion more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion is the promised opinion.

## FACTUAL BACKGROUND

The Court sets forth the facts as Plaintiff United States of America alleges them in its Criminal Complaint, filed July 31, 2015 (Doc. 2)("Complaint"), bearing in mind that Sam is presumed innocent of all charges, see Estelle v. Williams, 425 U.S. 501, 503 (1976)("The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice.")(citing Coffin v. United States, 156 U.S. 432, 453 (1895)). The Court recites the United States' version of the facts because the high burden of proof placed on it necessitates that it have a cogent, internally consistent version of events,[2] and not out of any predisposition to believe the United States' side of the story. See In re Winship, 397 U.S. 358, 365 (1970)("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

The Updated Pretrial Services Report, dated October 21, 2015 ("Bail Report"), indicates that Sam has resided in New Mexico his entire life and now lives alone in Lybrook, New Mexico, where he is a member of the Navajo community. See Bail Report at 1. Sam has four siblings who all live in New Mexico. He also has two children, ages four and five, from a previous relationship, who currently reside in Albuquerque, New Mexico. See Bail Report at 2. Sam is unemployed, having last worked from 2008 to 2013 as a home healthcare provider for his mother in Lybrook, New Mexico. See Bail Report at 2. Sam has a history of alcohol, marijuana,

---

[2]The defendant in a criminal case, on the other hand, need not present a cogent theory of the case or propose a comprehensive factual story. He or she may sit back and attempt to poke holes in the United States' theory of the case, and need not put on any case at all. See United States v. Wittig, No. 03-40142-JAR, 2005 WL 758606, at *4 (D. Kan. April 4, 2005) (Robinson, J.)("It is axiomatic that a defendant has a presumption of innocence, which means that a defendant need not present evidence, as the defendant has no burden of proof in a criminal case." (footnote omitted)).

and methamphetamine use and has pending probation violation proceedings.  <u>See</u> Bail Report at 2.

On July 30, 2015, Sam shot John Doe near Counselor, New Mexico.  <u>See</u> Complaint ¶ 3, at 1.  The day before the shooting, John Doe and his three brothers bought a twelve-pack of Old English malt liquor.  <u>See</u> Complaint ¶ 4, at 2.  After consuming the liquor, JH, John Doe's brother, told his other brothers that Sam owed him "approximately $45 that he leant Sam for gas money several months ago.  The brothers decided to collect the debt."  Complaint ¶ 4, at 2.  Around midnight on July 30, 2015, the four brothers arrived at Sam's residence shouting to Sam that he owed JH money and telling him to come outside.  <u>See</u> Complaint ¶ 5, at 2.  When Sam refused, John Doe and a brother "began to smash the car windows of the two automobiles parked outside of Sam's residence."  Complaint ¶ 5, at 2.

JH stated that he saw a man inside Sam's house -- later identified as Sam -- fire "between three and five rounds" at the four brothers while they were outside of their vehicle.  Complaint ¶ 6, at 2.  The four brothers got into their vehicle and fled the property.  As they sped down Sam's driveway, Sam fired several more shots at the vehicle, one of which "entered the back of John Doe's neck, and exited the oral cavity."  Complaint ¶ 6, at 2.  "JH drove the vehicle to John Doe's mother's house, located approximately four miles from Sam's residence," but John Doe died before arriving at the residence.  Complaint ¶ 7, at 3.

Emergency responders commenced a search for Sam.  <u>See</u> Complaint ¶ 8, at 2.  Sam surrendered to the San Juan County Sheriff's Office in New Mexico, who transferred him to the Navajo Tribal Police Department.  <u>See</u> Complaint ¶ 8, at 2.  The Federal Bureau of Investigation searched Sam's residence, and found "rifle casings, matched in caliber, that grouped in two separate areas of the property as well as an AK-47 rifle with a drum magazine and a chambered

live round of ammunition."  Complaint ¶ 9, at 2.  Sam told the FBI that on the night of the incident, he "heard a loud commotion" and thought that someone was trying to "break into his home by pounding on his entrance door."  Complaint ¶ 10, at 3.  He said that, while he "held the door shut with his body weight," he "heard a loud bang that sounded like a gunshot."  Complaint ¶ 10, at 3.  Sam said that once he heard a vehicle drive away, "he ran to his cousin's house" to ask the occupant, Alonzo Harvey, for an AK-47 rifle to protect himself.  Complaint ¶ 10, at 3.

After returning to his home, Sam said that he "was fired upon twice by what he believed to be a rifle," so he "returned fire and shot approximately five times."  Complaint ¶ 10, at 3.  He stated that about four to six men entered a vehicle and started to drive away.  As they were doing so, he said that he "shot an additional five rounds at the departing vehicle."  Complaint ¶ 10, at 3.  Sam then fled his residence.  See Complaint ¶ 11, at 3.

## PROCEDURAL BACKGROUND

The Bail Report indicates that Sam poses a risk of danger because of the violent nature of the offense and his history of arrests, which include arrests for domestic violence, aggravated assault on a peace officer, and failure to appear for court.  See Bail Report at 4.  Sam pled guilty to the aggravated assault on a peace officer charge from June 20, 2014.  He is currently serving two years of probation, but has already violated the terms of his probation twice.  See Bail Report at 4.  Based on Sam's criminal history and other personal characteristics, United States Probation Officer Andrew Selph recommended that Sam be detained, "as it appears there is no condition or combination of conditions that will reasonably assure the appearance of this defendant as required or the safety of the community."  Bail Report at 3.

A federal grand jury indicted Sam on August 25, 2015.  See Indictment at 1, filed August 25, 2015 (Doc. 14).  The Indictment charges Sam with: (i) one count of killing John Doe with a

firearm in violation of 18 U.S.C. §§ 1153 and 1111 (second degree murder); (ii) one count of knowingly possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) after being convicted of a felony punishable by imprisonment for more than one year; and (iii) one count of knowingly possessing, using, carrying, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).  See Indictment at 2-3.

On August 5, 2015, Judge Yarbrough entered the Detention Order Pending Trial denying Sam's request to be released pending trial.  See Detention Order Pending Trial, filed August 5, 2015 (Doc. 12)("Detention Order").  After conducting a detention hearing pursuant to the Bail Reform Act, 18 U.S.C. § 3142(f), Judge Yarbrough concluded that Sam should be detained pending trial.  See Detention Order at 1.  Judge Yarbrough determined that the United States demonstrated by clear-and-convincing evidence that no terms and conditions for release would secure the community's safety.  See Detention Order at 2.  Judge Yarbrough therefore committed Sam to confinement in a corrections facility to await trial.  See Detention Order at 2.

Sam appealed the Detention Order on October 7, 2015.  See Appeal at 1.  Sam requests that the Court vacate Judge Yarbrough's Detention Order detaining him pending trial.  See Appeal at 1.  Specifically, he requests that he be "released to a halfway house pursuant to 18 U.S.C. § 3142(c)(1)(B)(i)."  Appeal at 1.  Sam states that Judge Yarbrough ordered him to be detained pending trial because there were no terms or conditions for release "at that time" to secure the community's safety and ensure his appearance at trial.  Appeal at 1 (quoting Detention Order at 2).  Sam contends that, after conducting a deeper investigation, however, the evidence shows that there are conditions for his release that could accomplish those goals.  See Appeal at 2.

Sam argues that newly discovered evidence demonstrates he does not pose a danger to the community's safety.  The evidence reveals that John Doe and his brothers "initiated very specific death threats" against him, so Sam's behavior was an attempt to save his own life. Appeal at 2-3.  He contends that "[t]hese facts were not developed at the time of the initial detention hearing by the FBI."  Appeal at 3.  Moreover, he states that these new facts "are extraordinarily relevant for the Court to consider in determining whether there are appropriate conditions of release pursuant to 18 U.S.C. § 3142(g)(1) and (2) because the evidence goes directly to the 'nature and circumstances of the offense' and 'the weight of the evidence against the person.'"  Appeal at 3.

The United States responded on October 14, 2015.  See United States' Response to Defendant's Appeal of Detention Order (Doc. 27)("Response").  It asserts that Sam is charged with crimes that create a statutory presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  Response at 2 (quoting 18 U.S.C. § 3142(e)(2)).  The United States argues that Sam has not rebutted the presumption by introducing evidence to the contrary.  See Response at 2.  The United States asserts: "Even if Sam were able to meet his burden of production . . . . the § 3142(g) factors weigh conclusively in favor of finding that Sam is a flight risk and danger and that he should continue to be detained pending trial."  Response at 3.

The Court held an evidentiary hearing on October 16, 2015.  See Transcript of Hearing at 7:3-5 (taken October 16, 2015)( Ainsworth, Gorence)("Tr.").[3]  An investigator and former officer for the Bureau of Alcohol, Tobacco, and Firearms, Gary Ainsworth, testified that someone, not necessarily JH or John Doe, had made death threats to Sam through graffiti on the

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

outside of his house.  See Tr. at 7:3-5 (Ainsworth, Gorence); id. at 10:12-11:2 (Ainsworth).  The United States presented evidence, however, that Sam did not receive the threats until after he shot John Doe.  See Tr. at 22:7-19 (Adams, Ainsworth).  Ainsworth stated that there had been drive-by shootings at Sam's residence several months before the shooting.  See Tr. at 11:11-19 (Ainsworth, Gorence).  Ainsworth also testified that Sam's neighbor from whom he borrowed the AK-47, Alonzo Harvey, heard what sounded like gun shots from multiple guns.  See Tr. at 15:8-15 (Ainsworth, Gorence); id. at 30:1-12 (stating that a thirteen-year-old girl located 500 yards away from the shooting described some gun shots as louder than others, indicating the shots came from different guns).  Despite this observation, Ainsworth admitted that the reason that some gun shots sounded louder than others could be because some shots were fired from a closer distance.  See Tr. at 31:7-32:19 (Adams, Ainsworth).

On cross-examination, Ainsworth acknowledged that John Doe's gunshot wounds demonstrated that the shooter likely shot from behind the vehicle.  See Tr. at 25:2-23 (Adams, Ainsworth).  The United States presented evidence that the vehicle in which Sam shot John Doe was a "significant distance" from Sam's residence, demonstrating that the men in the vehicle were fleeing and no longer posed an imminent threat.  Tr. at 25:24-26:2 (Adams); Photograph of distance between Sam's shooting location and John Doe (undated)(admitted into evidence as Government Exhibit 2 on introduced October 16, 2015).  Moreover, the United States showed that, when given the opportunity to wait at Harvey's home, Sam instead chose to take Harvey's AK-47 and return to his home.  See Tr. at 28:13-23 (Adams, Ainsworth).  Because of the United States' evidence against Sam and his history of violence, the Court expressed its concern with allowing Sam to remain in a halfway house pending trial: "[I]f he were to bolt from the halfway

house over here, it would put the officers, the marshals trying to pick him up, at some risk." Tr. at 42:10-13 (Court).

Additionally, the Court noted that it often has success in putting Navajos at the halfway house under restrictive conditions. See Tr. at 56:20-25 (Court). In those cases, the Court noted, the defendants committed crimes while under the influence of alcohol. See Tr. at 70:17-20 (Court). The Court found that preventing the defendants from obtaining alcohol also kept them from violence. See Tr. at 70:17-20 (Court). Here, however, Sam resorted to violence without drinking any alcohol. See Tr. at 71:13-72:7 (Gorence). The Court expressed its concern that preventing Sam from drinking alcohol would not curb his use of violence. See Tr. at 72:8-14 (Court).

With respect to Sam's risk of flight, Ainsworth stated that after the shooting, Sam waited with Harvey and did not attempt to flee. See Tr. at 19:10-12 (Ainsworth, Gorence). Sam stated that he is a United States citizen who has lived in New Mexico his entire life. See Tr. at 41:7-9 (Gorence). The United States conceded that it lacked evidence to show Sam was a flight risk, "other than the fact that he's facing a life sentence." Tr. at 63:5-10 (Adams). The Court took the matter under advisement to allow United States Probation Officer Andrew Selph to gather more information and interview Sam. See Tr. at 69:21-70:8 (Court). Particularly, the Court wanted to know more about Sam's arrest for assaulting a peace officer, to determine whether it would be safe for the Marshals to attempt to arrest Sam if he fled the halfway house. The Court noted that, in cases involving alcohol and violence, it had good luck keeping Navajos in the halfway house and away from alcohol, and detainees had done well. The Court was concerned that here, however, where Sam did not use alcohol, keeping him at a halfway house and away from alcohol would not prevent his use of gun violence.

The updated Bail Report discussed Sam's criminal history in more detail.  It revealed that Sam had violated his probation for the conviction for assaulting a peace officer with a deadly weapon.  See Bail Report at 4.  It also provided more information regarding Sam's assault on a peace officer.  See Bail Report at 5-8.  The additional information revealed that on June 20, 2014, Sam shot at a police officer who was following his SUV.  See Bail Report at 9; State of New Mexico v. Richmond Sam, Affidavit for Arrest Warrant, filed in state court June 23, 2014. Sam's bullet hit the officer's vehicle, but did not injure the officer.

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3150, a court may detain a defendant pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence.  See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003).  "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).  To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

> (g)      **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning --
>
> > (1)      the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a

Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)    the weight of the evidence against the person;

(3)    the history and characteristics of the person, including --

   (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

8 U.S.C. § 3142(g).

   When a defendant is charged with certain crimes, however, a presumption arises that the defendant is a flight risk and a danger to the community.  See 18 U.S.C. § 3142(e)(3); United States v. Villapudua-Quintero, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)(per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders).  18 U.S.C. § 3142(e)(3)(A) provides that a presumption of detention arises when "there is probable cause to

believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46."  18 U.S.C. § 3142(e)(3)(A).  The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993).  Accord United States v. Holguin, 971 F. Supp. 2d 1082, 1088 (D.N.M. 2011)(Browning, J.).  "'Once the presumption is invoked, the burden of production shifts to the defendant.'"  United States v. Holguin, 791 F. Supp. 2d at 1087 (quoting United States v. Stricklin, 932 F.2d 1353, 1354-55(10th Cir. 1991)).

To determine whether there are conditions that would reasonably assure the defendant's appearance and the community's safety, a court must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the defendant's history and characteristics, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that release would pose.  See 18 U.S.C. § 3142(g). "Should the defendant satisfy his or her burden of production under 18 U.S.C. § 3142(f), the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community."  United States v. Holguin, 791 F. Supp. 2d at 1087 (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.")).  Notably, however, even if the defendant meets his or her

burden of production under 18 U.S.C. § 3142(f), "the presumption remains a factor for consideration by the district court in determining whether to release or detain." United States v. Stricklin, 932 F.2d at 1355. Accord United States v. Mercedes, 254 F.3d at 436.

### THE DISTRICT COURT'S STANDARD OF REVIEW

Section 3145(a) of Title 18 provides that a "court having original jurisdiction over the offense" may review a magistrate judge's detention order or release order. 18 U.S.C. § 3145(a)-(b). "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." United States v. Cisneros, 328 F.3d at 616 n.1. "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992). See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of a magistrate judge's order setting bond was de novo).

### ANALYSIS

Because the United States charges Sam with violent crimes, he must come forward with evidence to rebut the presumption that he constitutes a flight risk and a danger to the community. Sam meets this burden. Nonetheless, the United States demonstrates by clear-and-convincing evidence that Sam constitutes a danger to the community and that the Court cannot impose conditions to mitigate that risk to acceptable levels. Accordingly, the Court denies Sam's appeal, affirms Judge Yarbrough's Detention Order, and orders Sam to remain in custody pending trial.

### I. SAM HAS MET HIS BURDEN OF COMING FORWARD WITH EVIDENCE IN RESPONSE TO THE PRESUMPTION.

Because of the charges that Sam faces, the 18 U.S.C. § 3142(e)(3)(A) presumption of detention applies. Sam therefore shoulders the burden of producing evidence to show that the

Court could impose conditions which would secure his appearance at trial and remove any danger to the community. See 18 U.S.C. § 3142(f). Although the defendant bears the burden of production, the burden of persuasion regarding risk-of-flight and dangerousness always remains with the United States. See United States v. Stricklin, 932 F.2d at 1354-55. The Tenth Circuit has stated that the defendant's burden of production "is not heavy." United States v. Stricklin, 932 F.2d at 1355.

Sam presents some evidence to support his contention that the Court could impose conditions to mitigate his danger to the community. In determining whether the defendant has met his burden of production to rebut the presumption, courts must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the defendant's history and characteristics, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the seriousness of the danger to the community or to an individual that the defendant's release would pose. See 18 U.S.C. § 3142(g).

Through Ainsworth's testimony, Sam introduced evidence that speaks to the first and fourth § 3142(g) factors. More specifically, his evidence suggests the nature and circumstances of the crime were less severe, and that he poses a less serious danger to the community than the evidence originally suggested. See 18 U.S.C. § 3142(g). Ainsworth testified that Sam's actions were a response to what he believed to be a life-threatening situation. See Appeal at 1-2. Sam's evidence indicated that his gunshots could have been in self-defense. See Tr. at 15:8-15 (Ainsworth, Gorence)(stating that neighbors thought they heard shots from multiple guns); id. at 30:1-12 (stating that a thirteen-year-old girl located 500 yards away from the shooting described some gun shots as louder than others, indicating the shots came from different guns). If true,

both of these facts indicate that his crime is less severe, and that he poses less of a risk to his community because he fired the rifle to protect himself rather than in revenge.

Sam also introduced evidence regarding § 3142(g)'s third factor: the defendant's history and characteristics.  Sam is a United States citizen who has resided in New Mexico his entire life.  <u>See</u> Bail Report at 1.  He is a member of the Navajo community.  <u>See</u> Bail Report at 1.  He has four siblings who all live in New Mexico.  He also has two children, ages four and five, who currently reside in Albuquerque, New Mexico.  <u>See</u> Bail Report at 2.  Case law states that a defendant's strong community ties suggest that he poses less of a flight risk and danger to the community.   <u>See</u> <u>United States v. Robertson</u>, 2008 WL 2565015, at *2 (D.N.D. June 24, 2008)(Senechal, J.)(concluding that the defendant was not a danger to the community when he lived in the community his entire life and supported his mother); <u>United States v. Thomas</u>, 2006 WL 140558, at *7 (D. Md. Jan. 13, 2006)(Gauvey, J.)(concluding that the defendant's strong family and community support throughout the proceedings indicated he was not a danger).   Sam also possesses few resources to flee.  His only financial asset is a 2000 Chevrolet Tahoe valued at $500.  <u>See</u> Bail Report at 2.  Although Sam's evidence is not overwhelming, the Tenth Circuit has emphasized that the defendant's burden of production "is not heavy."   <u>United States v. Stricklin</u>, 932 F.2d at 1355.   Under the Tenth Circuit's standard, Sam meets his burden of coming forward with evidence to rebut the presumption that he poses a danger to the community and a flight risk.

## II.    THE UNITED STATE HAS NOT SHOWN BY A PREPONDERANCE OF THE EVIDENCE THAT SAM CONSTITUTES A FLIGHT RISK.

Because Sam met his burden of production, the United States must demonstrate that he is a flight risk by a preponderance of the evidence.  Sam presents evidence that he poses little risk of flight.  He has numerous family members that live in the immediate area and has little means

to flee.  See Bail Report at 2-3.  The United States concedes that it has little evidence suggesting

Sam is a flight risk.  See Tr. at 63:5-10 (Adams).  It presented little evidence reflecting Sam's

risk of flight.  Accordingly, the United States has not met its burden of persuasion to show that

Sam constitutes a flight risk and that the Court could impose no conditions to lower that risk to

acceptable levels.

III.   **THE UNITED STATES HAS SHOWN BY CLEAR-AND-CONVINCING EVIDENCE THAT SAM POSES A DANGER TO THE COMMUNITY, AND THAT THE COURT CANNOT IMPOSE CONDITIONS THAT WOULD MITIGATE THAT DANGER TO ACCEPTABLE LEVELS.**

Although Sam presents evidence to rebut the presumption that he constitutes a danger to

the community, the United States shows by clear-and-convincing evidence that the Court cannot

impose conditions that would mitigate that risk to acceptable levels.  The first § 3142(g) factor --

"the nature and circumstances of the crime charged" -- weighs in favor of detention.  The United

States charges Sam with dangerous and/or violent crimes, including: (i) second-degree murder;

(ii) being a felon in possession of a firearm; and (iii) using, carrying, possessing, and discharging

a firearm during a crime of violence.  See Indictment at 1-3.  Sam presents evidence through

Ainsworth's testimony that suggests the alleged crime's nature and circumstances were less

severe.  Ainsworth testified that Sam's actions were a response to what he believed to be a life-

threatening situation that could have involved gunshots from his assailants.  See Appeal at 1-2.

Although Sam's evidence suggests that his actions may have been in self-defense, the United

States presents evidence showing that Sam was the only one to fire a gun.  See Tr. at 31:7-32:19

(Adams, Ainsworth).  Moreover, the United States presents evidence that Sam did not receive

any death threats until after he shot John Doe, making it less likely that he thought he had to

resort to deadly force when the four brothers came to his house.  See Tr. at 22:7-19 (Adams,

Ainsworth).  Finally, Sam faces charges of three violent and/or dangerous crimes.  Thus, despite

Sam's evidence, the United States shows that the nature and circumstances of the crimes charged suggest that Sam presents a danger to the community.  See § 3142(g).

The United States also has considerable evidence against Sam.  Sam alleges in his Appeal that he can present evidence that the "victim was not shot while attempting to flee."  Appeal at 2. Sam presented no such evidence in the Appeal or at the evidentiary hearing.  If anything, Ainsworth's testimony bolsters the United States' contention that Sam shot the victim while he was driving away and presented no further immediate danger.  See Tr. at 25:2-23 (Adams, Ainsworth)(recognizing that John Doe's gunshot wounds to the back of the head demonstrates that the shooter likely shot from behind the vehicle).  Furthermore, the United States presents evidence that the vehicle into which Sam shot and hit John Doe was a "significant distance" from Sam's residence, demonstrating that the men in the vehicle were fleeing and no longer posed an imminent threat.  See Tr. at 25:24-26:2 (Adams); Government Exhibit 2.  The United States also has "several shell casings from an AK-47 that Sam admitted to firing" and the weapon. Response at 3.

Sam's personal characteristics also indicate that he poses a danger to the community.  His criminal record reflects this danger.  He pled guilty to aggravated assault on a peace officer with a deadly weapon on December 18, 2015.  See Bail Report at 4.  As of August 10, 2015, Sam has been pending a probation violation in Sandoval County arising from his involvement in a shooting on May 4, 2014.  See Bail Report at 4; Response at 4.  See also United States v. Charley, 2010 WL 4338094, at *6 (D.N.M. Sept. 9, 2010)(Browning, J.)(stating that the defendant's lack of criminal history indicated that he would not pose a danger to others while on release). Sam's family lives in New Mexico, he is a Navajo, and thus has ties to the community. Nonetheless, he has no job and no long-term relationships outside his immediate family; he was

last employed as a home healthcare assistant to his mother from 2008 to 2013.  See Bail Report at 2.  See also United States v. Charley, 2010 WL 4338094, at *6 (determining that the defendant's seven-year employment history and ten-year marriage indicated he would not endanger the community under imposed conditions).  In light these factors, the Court cannot impose conditions to mitigate Sam's danger to the community.  In particular, the Court is concerned that if it placed Sam in a halfway house, he might leave or otherwise violate his conditions of release; he has not done well on probation.  The Court is concerned that, if Sam violated his conditions, it would have to send the U.S. Marshals to arrest him and that, given his prior assault on a peace officer, doing so would endanger the U.S. Marshals.  The Court is reluctant to put the U.S. Marshals in danger.  The Court has good luck putting Navajos in the halfway house pending trial.  All these cases, however, involved crimes committed under the influence of alcohol.  As long as the Court imposed pretrial conditions that precluded the use of alcohol and got them counseling for alcohol abuse, the Navajo defendants have done well in a halfway house in Albuquerque.  Sam's situation is different, and the differences are material. There is no evidence that he shot John Doe while under the influence of alcohol.  Thus, it appears that Sam can resort to violence without any alcohol, and that preventing his use of alcohol might have no influence on his use of violence. See Tr. at 70:20-25 (Court).  In short, the Court is concerned that Sam would not respect the U.S. Marshals if they came to arrest him.  The Court therefore concludes that it cannot impose conditions that would mitigate Sam's danger to the community.  See Bail Report at 3 (recommending that Sam be detained "as it appears there is no condition or combination of conditions that will reasonably assure the appearance of this defendant as required or the safety of the community").

**IT IS ORDERED** that: (i) the Defendant's Appeal from the Magistrate's Oral Detention Order, filed October 7, 2015 (Doc. 25), is denied; and (ii) Sam remain in custody pending trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon Martinez
   United States Attorney
David M. Adams
   Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the United States*

Robert J. Gorence
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

   *Attorneys for the Defendant*